UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARREN J. SCIONEAUX                                           CIVIL ACTION

VERSUS                                                            NO. 18-5444

SOUTHEASTERN GROCERS, LLC,                          SECTION "R" (1)
ET AL.

**ORDER AND REASONS**

Defendants, Southeastern Grocers, LLC and Winn-Dixie Montgomery, LLC, move for summary judgment on plaintiff Darren J. Scioneaux's disability discrimination claims under the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. § 23:321, *et seq*.[1]  Plaintiff opposes the motion.[2]  Because there are no genuine disputes as to any material fact, and because defendants are entitled to judgment as a matter of law, the Court grants the motion.

I.      **BACKGROUND**

This case arises from an employment dispute.   In an affidavit, Scioneaux attests that he worked at one of defendants' Winn-Dixie stores in

---

[1]     R. Doc. 38.
[2]     R. Doc. 54.

the New Orleans area from April 2011 through April 2016.[3]   Winn-Dixie initially hired plaintiff as a "co-director."[4]   In March 2013, plaintiff attests that he was promoted to "store director," the highest level employee in the store.[5]

Plaintiff states that he suffers from a "degenerative disease" in his shoulders,[6] and that, throughout the five years he worked at Winn-Dixie, he never lifted more than 20 pounds with his left arm.[7]   In April 2016, plaintiff attests, the condition of his left shoulder worsened.[8]   Plaintiff states that he requested a leave of absence from Winn-Dixie so that he could undergo corrective surgery for his left shoulder.[9]   The request was granted,[10] and plaintiff had shoulder surgery on May 3, 2016.[11]

Following surgery, plaintiff was initially scheduled to return to work on June 27, 2016.[12]   One week before his return, on June 20, 2016, plaintiff's doctor faxed a medical release to Winn-Dixie stating that plaintiff would be

---

[3]     R. Doc. 54-2 at 2-4 ¶ 10, 24-35 (Scioneaux Affidavit).
[4]     *Id.* at 2, ¶ 10.
[5]     *Id.* at ¶ 11.
[6]     R. Doc. 54-2 at 1, ¶ 4 (Scioneaux Affidavit).
[7]     *Id.* at 3, ¶ 20.
[8]     R. Doc. 54-2 at 3, ¶ 22 (Scioneaux Affidavit).
[9]     *Id.* at ¶¶ 23-24.
[10]    *Id.* at ¶ 24.
[11]    R. Doc. 54-3 at 6 (Scioneaux Deposition at 21:3-7).
[12]    R. Doc. 54-2 at 3, ¶ 25 (Scioneaux Affidavit).

temporarily restricted from lifting five pounds for two months, and permanently restricted from lifting 20 pounds.[13]   According to plaintiff's affidavit, Melissa Monroe, one of defendants' "Leave of Absence Specialists,"[14] called plaintiff and told him that Winn-Dixie could not accommodate the five-pound restriction, but would be able accommodate a 20-pound restriction.[15]

Accordingly, on June 23, 2016, plaintiff's doctor sent a new medical release that pushed plaintiff's start date back to July 18, 2016, removed the five-pound restriction, but retained the permanent 20-pound restriction.[16] Plaintiff attests that Winn-Dixie representatives emailed him, "suggesting that allowing [him] to work with a 20 [pound] lifting restriction would eliminate essential job functions of the Store Director/Manager position."[17]

On July 15, 2006, two of defendants' "Human Resources Business Partners," Randy Lashouto and Kelly Morris, held a meeting with plaintiff to discuss his leave and a potential return to work.[18]   According to Lashouto's deposition testimony, he and Morris explained to plaintiff that allowing him

---

[13]    R. Doc. 54-2 at 9 (June 20, 2016 Medical Release).
[14]    R. Doc. 38-5 at 1, ¶ 2 (Monroe Affidavit).
[15]    R. Doc. 54-2 at 4, ¶¶ 27-28 (Scioneaux Affidavit).
[16]    R. Doc. 54-2 at 10 (June 23, 2016 Medical Release).
[17]    R. Doc. 54-2 at 4, ¶ 33 (Scioneaux Affidavit).
[18]    R. Doc. 38-4 at 1, ¶ 3 (Morris Affidavit).

3

to work as store director with a permanent 20-pound restriction would eliminate an essential function of plaintiff's job.[19]  The result, Lashouto explained, would be to "push this function onto an already lean staff."[20] Plaintiff testified that Lashouto and Morris discussed transferring him to a cashier position, or to a "service area manager" role.[21]  But plaintiff states that he was unwilling to take the pay cut associated with transfer to the service area manager position.[22]

Plaintiff did not return to work for Winn-Dixie.  Defendants extended plaintiff's leave of absence until October 26, 2016, but in an email from Monroe, informed plaintiff that, if he failed to return to work by that date, Winn-Dixie would terminate his employment.[23]  Nevertheless, Monroe attests that plaintiff's employment was not officially terminated until December 7, 2017.[24]

On March 1, 2018, plaintiff filed suit in state court, alleging claims for disability discrimination under the LEDL.[25]  Defendants removed to federal

---

[19]   R. Doc. 54-10 at 38 (Lashouto Deposition at 144:10-23).
[20]   *Id.* (Lashouto Deposition at 143:6-13).
[21]   R. Doc.54-3 at 39 (Scioneaux Deposition at 154:4-11)
[22]   *Id.* (Scioneaux Deposition at 154:4-157:5).
[23]   R. Doc. 38-9 at 34 (Monroe Email).
[24]   R. Doc. 38-5 at 2, ¶ 6 (Monroe Affidavit).
[25]   R. Doc. 1-1 at 6 (Original Complaint); *see also* R. Doc. 5 at 8, ¶ 32 (Amended Complaint).

court on May 30, 2018, contending that the requirements for diversity jurisdiction under 28 U.S.C. § 1332 are met.[26]  Now, defendants move for summary judgment on plaintiff's claims.  The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting

---

[26]    R. Doc. 1 at 1, ¶ 1 (Notice of Removal).

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins.  v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id*. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325.   The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III.   DISCUSSION

Plaintiff brings two claims under the LEDL: failure to accommodate and discriminatory discharge.[27] Because of the similarities between the LEDL and the Americans with Disabilities Act ("ADA"), Louisiana state courts and federal courts in the Fifth Circuit rely on the ADA and interpreting federal jurisprudence in construing the LEDL. *See, e.g.*, *Thomas v. La. Casino Cruises, Inc.*, 886 So.2d 468, 470 (La. Ct. App. 1 Cir. 2004) (noting that the LEDL is "similar to the Americans with Disabilities Act," and that "[Louisiana] courts have relied upon [the ADA] and the interpreting federal

---

[27]   R. Doc. 5 at 8, ¶ 32 (Amended Complaint).

jurisprudence" in construing the LEDL); *Mitchell v. Tracer Const. Co.*, 256 F. Supp. 2d 520, 530 (M.D. La. 2003) (applying Louisiana's anti-discrimination law and noting that "Louisiana courts look to federal employment discrimination law for guidance").

### A.    Failure to Accommodate

To recover on a failure to accommodate claim, a plaintiff must establish that "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana, Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)).  Defendants argue that plaintiff was not qualified for his position, and that his requested accommodations were not reasonable.

The LEDL defines a "qualified person with a disability" as "a person with a disability who, with reasonable accommodation, can perform the essential functions of the employment position that such person holds . . . ." La. Rev. Stat. § 23:322(8).  To establish that he is qualified, plaintiff must show either (1) "that he could perform the essential functions of the job in spite of his disability" or (2) "that a reasonable accommodation of his disability would have enabled him to perform the essential functions of his

job." *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996) (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993)).

### 1.   Essential Functions

Defendants contend that lifting up to 80 pounds was an essential function of plaintiff's job.  The LEDL defines "[e]ssential functions" as "the fundamental job duties of the employment position the person with a disability holds or desires."  La. Rev. Stat. § 23:322(5).  But "'[e]ssential functions' does not include the marginal functions of the position."  *Id.* Though the term "essential function" is not defined in the ADA, the Fifth Circuit applies the definition set out in Equal Employment Opportunity Commission ("EEOC") regulations, which is substantially the same as the LEDL's definition.  *See Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 682 (5th Cir. 1996) (defining essential functions as "the fundamental job duties of the employment position" and noting that "the term does not include 'marginal functions'" (quoting 29 C.F.R. § 1630.2(n)).

The ADA provides that, in determining whether a function is essential, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."

9

42 U.S.C. § 12111(8). The EEOC's implementing regulations state that a job function may be essential for "several reasons." 29 C.F.R. § 1630.2(n)(2). For example, a function may be essential (1) "because the reason the position exists is to perform that function," (2) "because of the limited number of employees available among whom the performance of that job function can be distributed," and/or (3) because the function is "highly specialized," so that a person is hired specifically for his or her expertise or ability to perform that function. *Id.*

The EEOC regulations also contain seven non-exhaustive factors that guide the essential function inquiry:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

In evaluating these factors, the Court does not consider "the employee's opinion about what functions are essential." *Credeur v. Louisiana Through*

*Off. of Att'y Gen.*, 860 F.3d 785, 794 (5th Cir. 2017) (citing *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 764 (6th Cir. 2015)).  Instead, each of the seven factors "relate to the employer's judgment in some fashion."  *Id.*  The first two factors are direct evidence of the employer's judgment, and the remaining five are "circumstantial evidence of an employer's policies and practices pointing to a function being essential, or not."  *Id.*  Thus, although the Court "must give greatest weight to the employer's judgment," it "should not give blind deference."  *Id.* at 792, 794.  Instead, the Court must "evaluate the employer's words alongside its policies and practices."  *Id.* at 794.

Defendants here argue that lifting up to 80 pounds was an essential function of plaintiff's job.  They rely primarily on two job descriptions for plaintiff's role.  In an affidavit, one of Winn-Dixie's employees, Julia Costello, describes the process of developing the job descriptions, which involved "conduct[ing] field research, visit[ing] stores to observe individuals working in the position, and interview[ing] individuals who hold the position regarding their job duties."[28]  The first description—for the "store director" position—was in effect during plaintiff's term of employment.[29]  Winn-Dixie began using an updated job description—and changed the position title to

---

[28]     R. Doc. 38-7 at 1, ¶ 3 (Costello Affidavit).

[29]     R. Doc. 38-3 at 5-11 (Store Director Description).

"store manager"—in May 2016,[30] while plaintiff was on leave following his surgery.   The two descriptions contain a nearly identical list of "primary responsibilities."[31] The descriptions also set out various qualifications for the position, along with the "physical requirements."[32]  At issue here is whether the lifting requirement listed among the "physical requirements" is an "essential function" of the store director/manager position.[33]

Under the original job description, plaintiff was required to "occasionally"—defined as 1-33% of the time—carry, push, lift, or pull up to 80 pounds.[34]  Under the revised job description, defendants increased the

---

[30]    R. Doc. 38-3 at 12-13 (Store Manager Description).

[31]    *See* R. Doc. 38-3 at 5-8 (Store Director Description); R. Doc. 38-3 at 12 (Store Manager Description).

[32]    *See* R. Doc. 38-3 at 8-10 (Store Director Description); R. Doc. 38-3 at 12-13 (Store Manager Description).

[33]    Plaintiff contends that the essential functions for his position are listed under "primary responsibilities" on the job descriptions.  Plaintiff states that he could perform all of the "primary responsibilities," and that the "physical requirements"—which are separately listed in the job descriptions—are only marginal functions.  Plaintiff provides no authority for his argument that the Court should distinguish between the "physical requirements" listed in the job description, and the "primary responsibilities."  Courts, including the Fifth Circuit, have found that physical requirements listed in a job description may be essential functions.  *See Guerra v. United Parcel Serv., Inc.*, 250 F.3d 739 (5th Cir. 2001) (finding that the ability to lift 70 pounds is an essential function for a package car driver when the "job description requires that [plaintiff] be able to lift  [70] pounds"); *Mannan v. Colorado*, 841 F. App'x 61, 63 (10th Cir. 2020) (stating that the "essential functions" of a correctional officer include the "physical demands" listed on the position description).  Plaintiff's argument lacks merit.

[34]    R. Doc. 38-3 at 9 (Store Director Description).

amount of weight the "store manager" is required to carry, push, or lift to 100 pounds, and increased the amount he or she is required to pull to 500 pounds.[35]  The updated job description also indicates that the store director is required to perform these physical tasks "frequently," *i.e.*, between 34-66% of his or her time.[36]

Additionally, defendant relies on the testimony of Mohamed Abul-Hawa.   Abul-Hawa attests that he worked as a district manager for defendants from February 27, 2014 to March 22, 2017.[37]  He states that he was plaintiff's direct supervisor.[38]  In his affidavit, Abul-Hawa states that store directors must be able to lift 80 pounds "for numerous business reasons."[39]  For example, "if a customer needs a product from the storeroom, the Store Director is expected to retrieve it and bring it to the customer, not find someone else to do so."[40]  Abdul-Hawa states that "this assistance is consistent with" the job description's requirement that the store director "create a shopping and working environment that exemplifies the company's commitment   to   and   vision   of   service,   quality,   and   neighborhood

---

[35]     R. Doc. 38-3 at 13 (Store Manager Description).

[36]     *Id.*

[37]     R. Doc. 38-3 at 1, ¶ 2 (Abul-Hawa Affidavit).

[38]     *Id.* at ¶ 3.

[39]     *Id.* at 2, ¶ 6.

[40]     *Id.*

partnerships."[41]    Additionally,  the  store  director  is  responsible  for "manag[ing] facility assets including promptly addressing maintenance and safety  issues  and  daily  maintenance  of  floor  conditions."[42]   According  to Abul-Hawa, this "requires Store Directors to move merchandise and safely unload pallets of products" from grocery delivery trucks.[43] Abul-Hawa states that delivery trucks often arrive when there are no employees other than the store director available to unload the trucks.[44]

Plaintiff's  deposition  testimony  is  consistent  with  Abul-Hawa's statements.  At his deposition, plaintiff testified that it was "part of [his] job as a store manager" to "inspect the store," act as the "face of the store," "keep the store neat and tidy," assist customers with items, and unload delivery trucks.[45]  Plaintiff conceded that carrying out these duties involved lifting over 20 pounds, and that he would have done the job himself if not for his physical limitation.[46] But, when he was required to lift more than 20 pounds, plaintiff  testified  that  would  call  another  employee  over  to  help  him.[47] Regarding the delivery trucks, plaintiff testified that, in general, nine trucks

---

[41]    *Id.*

[42]    *Id.* at ¶ 7.

[43]    *Id.*

[44]    *Id.*

[45]    R. Doc. 38-8 at 26-29 (Scioneaux Deposition at 56:2-61:15).

[46]    *Id.* at 26-29 (Scioneaux Deposition at 56:10-58:24).

[47]    *Id.*

arrive each week.[48]   Plaintiff also stated that, when a truck arrived late or early, he would need to participate in unloading the truck.[49]

Despite this testimony, plaintiff argues that the lifting requirement is not an essential function of the store manager/director role.  Plaintiff relies mostly on his subjective judgment that the lifting requirement was not an essential function of his job.  *Cf. Credeur*, 860 F.3d at 792 (holding that plaintiff's "subjective judgment" that workplace attendance was not an essential function of her job was not enough to create a genuine dispute of material fact on summary judgment).  Specifically, plaintiff contends that he successfully performed his job for three years by delegating his lifting tasks to other employees.  But there is no evidence that defendants were aware that plaintiff was delegating these tasks, or that they would have approved of it if they had known.  To the contrary, Abul-Hawa attests that he was unaware that plaintiff was assigning lifting tasks to other employees, and that if he had known Scioneaux was avoiding lifting 20 pounds, he would have worked to determine whether accommodations were available.[50]

The other evidence that plaintiff relies on is inapposite.  For example, plaintiff points to the deposition testimony of Kelly Morris, one of

---

[48]   *Id.* at 42 (Scioneaux Deposition at 72:1-9).
[49]   *Id.* at 28-29 (Scioneaux Deposition at 58:21-59:7)
[50]   R. Doc. 38-3 at 1-2, ¶ 5 (Abul-Hawa Affidavit).

defendants' human resources employees, who stated that it would not be "offensive" to Winn-Dixie if a manager "delegate[d] some of" his or her duties to lower level employees.[51]  But Morris also testified that the manager is required to "jump in and do the physical aspects of managing the store," and if he or she delegated the position's physical functions, it would "create a strain on store labor."[52]  Morris's testimony highlights that plaintiff's lifting functions were essential because of the limited number of employees available to perform them.  *See also* R. Doc. 54-10 at 38 (Lashouto Deposition at 143:6-13) (referring to the "already lean staff" at Winn-Dixie); 29 C.F.R. § 1630.2(n)(2)(ii) ("[A] function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed.").

Additionally, plaintiff contends that a different human resources employee, Randy Lashouto, testified that he never witnessed any store employees pushing 500 pounds, as required under the updated job description, at least without "the proper tools."[53]  But defendants contend that plaintiff could not meet the lifting requirement, not the pushing requirement, and Lashouto's testimony does not create an issue of material

---

[51]   R. Doc. 54-4 at 31 (Morris Deposition at 119:16-20) (emphasis added).
[52]   *Id.* at 34 (Morris Deposition at 132:15-25)
[53]   R. Doc. 54-10 at 43 (Lashouto Deposition at 161:5-23).

fact on the question of whether the lifting requirement is an essential function of plaintiff's former job.

Finally, plaintiff introduces testimony from Willie Greenwood, one of his former subordinates at Winn-Dixie. Though the experience of current and former employees may be relevant to the essential functions inquiry, *see* 29 C.F.R. §1630.2(n)(3)(vi)-(vii), those employees must be "similarly situated comparator[s]." *Credeur*, 860 F.3d at 795. When an employee proffers a fellow employee as a comparator, the Fifth Circuit requires that "the employment actions at issue were taken under nearly identical circumstances." *Id.* (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Among other things, this requires that the comparator "shares the same job or responsibilities." *Id.*

Greenwood states that, in 2015,[54] he worked as a "merchandizing manager," although he changed his testimony at his deposition to state that he worked as a "center store area manager."[55] Greenwood states that, at that time, he suffered a stroke that caused him to lose the use of his right hand and shoulder.[56] Greenwood attests that his supervisors, including Abul-

---

[54] In an affidavit, Greenwood attested that his stroke occurred in 2013. At his deposition, he corrected himself to state that the stroke happened in 2015. R. Doc. 54-6 at 4 (Greenwood Deposition at 12:8).

[55] *Id.* at 7 (Greenwood Deposition at 23:3-24:8).

[56] *Id.* at 10-11 (Greenwood Deposition at 34:8-13, 38:20-23).

Hawa, were aware of Greenwood's physical limitations.[57]   Nevertheless, according to Greenwood, defendants allowed him to return to work.[58]   But Greenwood is not a "similarly situated comparator."  *Id.*  It is undisputed that Scioneaux, the "store director," worked in a different role than Greenwood, and plaintiff has not pointed to any evidence demonstrating that the two had shared responsibilities.   The Court finds that Greenwood's testimony is inapplicable for determining the essential functions of plaintiff's job.

In sum, defendants have shown that, in their judgment, the lifting requirements were an essential function of plaintiff's job.  Plaintiff has failed to point to contrary evidence.  Thus, the Court finds that plaintiff has failed to create an issue of material fact on the question of whether the lifting requirement was an essential function of the store director/manager job.

## 2.   *Reasonable Accommodation*

Plaintiff argues that defendants should have accommodated his limitation by allowing him to delegate his lifting duties to other employees. Defendants argue that this requested accommodation is facially

---

[57]   R. Doc. 54-5 at 3, ¶ 29 (Greenwood Affidavit).
[58]   *Id.* at ¶ 30.

unreasonable, or, in the alternative, that it would impose an undue hardship on their business.

A reasonable accommodation is one that "provide[s] the qualified individual with a disability with an equal employment opportunity," that is, "an opportunity to attain the same level of performance, or to enjoy the same level of benefits and privileges of employment, as are available to the average similarly situated employee without a disability." EEOC Interpretive Guidance, § 1630.9. Among other things, reasonable accommodations may include:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B). An employer is not required to provide the "best" accommodation or the employee's preferred accommodation. Instead, the employer must provide an accommodation that "is sufficient to meet the job-related needs of the individual being accommodated." *E.E.O.C. v. Agro Distribution, LLC,* 555 F.3d 462, 471 (5th Cir. 2009). When no reasonable accommodation is available, the employer is not required to make an accommodation. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 620 (5th Cir. 1999). Additionally, an employer faced with a demand for reasonable

19

accommodations may deny the request on the ground that the accommodation would create an undue hardship.  *See Riel*, 99 F.3d at 682 (quoting 42 U.S.C. § 12112(b)(5)(A)).

The Fifth Circuit has held that an employer is not required "to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so.  *Burch*, 174 F.3d at 621; *see also Jones v. Kerrville State Hosp.*, 142 F.3d 263, 265 (5th Cir. 1998) ("As a matter of law, it is an unreasonable accommodation for the employer to have to exempt the employee from performance of an essential function of the job.").  Similarly, in *Pegues v. Mississippi State Veterans Home*, 736 F. App'x 473, 477 (5th Cir. 2018), the Fifth Circuit held that excusing an employee from performing his or her essential functions, and leaving performance of those functions to other employees, is "an undue hardship in and of itself."

Here, plaintiff's requested accommodation is that defendants assign one of his essential functions—his lifting duties—to other employees.  As a matter of law, this accommodation is unreasonable.  *Burch*, 174 F.3d at 621; *Jones*, 142 F.3d at 265.  Moreover, under Fifth Circuit precedent, this requested accommodation would be an undue burden on defendants. *Pegues*, 736 F. App'x at 477.  The Court finds that plaintiff has failed to show

that there is a reasonable accommodation that would allow him to perform the essential functions of his former position.

Because there is no dispute of fact as to whether lifting was an essential function of plaintiff's job, and because plaintiff has failed to show that a reasonable accommodation exists for his limitation, the Court finds that no issues of material fact exist as to whether plaintiff is qualified for the store director/manager position.[59]   The Court grants defendant's motion for summary judgment on plaintiff's failure to accommodate claim.

## B.   Discriminatory Discharge

Plaintiff relies on circumstantial evidence to prove his discriminatory discharge claim. *Cf. Reilly v. TXU Corp.*, 271 F. App'x 375, 379 (5th Cir. 2008) (describing "direct evidence" as evidence "that discrimination motivated or was a substantial factor in the adverse employment action"). Accordingly, the *McDonnel Douglas Corp. v. Green*, 410 U.S. 952 (1973), burden shifting framework applies. *LHC Grp., Inc.*, 773 F.3d at 694. Under this framework, plaintiff carries the initial burden of establishing a *prima*

---

[59]   Defendants also argue that the Court should estop plaintiff from arguing he is qualified for his position because he applied for Social Security Disability Insurance while on leave.  In that application, plaintiff represented that he was unable to work.  Having found that plaintiff has failed to create an issue of material fact as to whether he is qualified, the Court need not address this argument.

*facie* claim.  *Id.*  Scioneaux must support his claim with evidence "(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability."  *Id.* at 697.  If he succeeds, the burden shifts to the defendants to articulate a "legitimate, non-discriminatory reason" for the action.  *Id.* at 694.  Finally, if defendants satisfy their burden, the burden shifts back to the plaintiff to show that defendants' proffered reason was pretextual.  *Id.*

Defendants contend that plaintiff has failed to carry his burden of proof on the elements of his *prima facie* claim.[60]  Defendants concede that plaintiff has a disability,[61] but contest the second and third elements of plaintiff's claim: that he was qualified, and that he was subject to an adverse employment action.  As discussed above, the Court finds that plaintiff failed to create an issue of material fact on the question of whether he was qualified for the store director/manager position.  The Court finds that plaintiff has not stated a *prima facie* claim for discriminatory discharge.  Accordingly, the Court grants defendant's motion for summary judgment as to this claim.

---

[60]    R. Doc. 38-2 at 21-23 (Memorandum in Support of Motion for Summary Judgment).

[61]    *Id.* at 21 n.8.

## IV.   CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.  Plaintiff's complaint is DISMISSED.  Defendants' motions *in limine*[62] and motion to produce records[63] are DISMISSED AS MOOT.

New Orleans, Louisiana, this  11th  day of June, 2021.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[62]   R. Docs. 65, 66.
[63]   R. Doc. 69.

23